UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DENISE DACIER,
    Plaintiff,

v.                                               C.A. No. 18-225-JJM-PAS

ANCHOR MEDICAL ASSOCIATES,
    Defendants.

ORDER

Before the Court is Anchor Medical Associates' motion to dismiss Plaintiff Denise Dacier's Complaint. For the following reasons the motion is DENIED.

Ms. Dacier was attacked and assaulted by a patient while performing a medical examination. The assault resulted in her being transported, via ambulance, for medical treatment. Ms. Dacier was fired a week after the assault for unexcused absences from work. Anchor offered an unsolicited alternative excuse for the dismissal—we were going to fire you anyway.

*Facts*

On July 17, 2017, Ms. Dacier was working for Anchor Medical Associates ("Anchor") as a nurse practitioner when she was "subjected to an unprovoked attack by [a] patient" where "the patient pulled [her] hair, grabbed her head and struck her in the face, causing her to fall backwards into [a] wall and then ground," thus causing her to be transported to Rhode Island Urgent Care by ambulance for treatment. ECF

1

No. 1-1 ¶¶ 16-18. The Warwick Police Department responded and a report was generated. *Id.* Ms. Dacier alleges she "sustained severe physical and emotional injuries" and "was compelled to undergo various medical evaluations and treatments for her injuries." ECF No. 1-1 ¶¶ 17, 19-20. On July 24, 2017, Dacier was terminated by letter from her position as nurse practitioner at Anchor for an "unnoticed absence" and because "'prior to her recent injury' the employer had determined that the Plaintiff's performance 'was not acceptable and not correctable and that [her] employment would have been terminated for those reasons anyway.'" ECF No. 1-1 ¶¶ 22, 26-27. Ms. Dacier is seeking relief for the Defendant's alleged discriminatory employment practices and retaliation. ECF No. 1-1.

*Procedure*

After satisfying administrative prerequisites, Ms. Dacier filed her complaint in The Rhode Island Superior Court. ECF No. 1-1. The Defendant removed the case to federal court. ECF No. 1-2. The Defendant filed a motion to dismiss under the Federal Rules of Civil Procedure Rule 12(b)(6). ECF No. 6. The Plaintiff opposed the motion to dismiss. ECF No. 10.

*Standard of review*

"Like a battlefield surgeon sorting the hopeful from the hopeless, a motion to dismiss invokes a form of legal triage, a paring of viable claims from those doomed by law." *Iacampo v. Hasbro, Inc.*, 929 F. Supp. 562, 567 (D.R.I. 1996). "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *García-Catalán v. United States*, 734 F.3d 100,

2

102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). The complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Gargano v. Liberty Int'l Underwriters*, 572 F.3d 45, 48 (1st Cir. 2009). "A Rule 12(b)(6) motion will be granted only if, when viewed in this manner, the pleading shows no set of facts which could entitle plaintiff to relief." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988) (citing *Conley v. Gibson*, 355 U.S. 41, 45–48 (1957)). "We augment those facts with facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." *Jorge v. Rumsfeld*, 404 F.3d 556, 559 (1st Cir. 2005).

*Analysis*

*Counts I, II, & III*

The Court finds Ms. Dacier has plead sufficient facts to make her disability claim plausible. The statutory language and definition of "disability" is similar in the Rhode Island Civil Rights Act (R.I.G.L. § 42-112-1 et seq.), Americans with Disabilities Act (42 U.S.C. § 12101 et seq.), and Rhode Island Fair Employment Practices Act (R.I.G.L. § 28-5-1 et seq.), as such, the Court will address those claims together. ECF No. 1-1 Counts I, II, & III. The Americans with Disabilities Act was enacted to eliminate or reduce "the physical and social structures that impede people with some present, past, or perceived impairments from contributing, according to their talents, to our Nation's social, economic, and civic life." *Tennessee v. Lane*, 541

U.S. 509, 535–36 (2004) (Ginsburg, J., concurring). "To prevail on a disability discrimination claim, a plaintiff must show by a preponderance of the evidence that [s]he (1) has a disability within the meaning of the ADA; (2) is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) was subject to an adverse employment action based in whole or part on [her] disability." *Ramos-Echevarria v. Pichis, Inc.*, 659 F.3d 182, 186 (1st Cir. 2011) (alterations in original). "The term 'disability' means . . . a physical or mental impairment that substantially limits one or more major life activities . . . or . . . *being regarded as having such an impairment.*" 42 U.S.C. § 12102 (alterations in original) (emphasis added). "An individual meets the requirement of *'being regarded as having such an impairment'* if the individual establishes that [ ] she has been subjected to an action prohibited under this chapter because of an actual or *perceived* physical or mental impairment *whether or not* the impairment limits or *is perceived to limit* a major life activity." *Id.* (emphasis added). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* (alteration in original). "[T]he statute seems to us to offer protection as well to one who is not substantially disabled or even disabled at all but is wrongly perceived to be so." *Katz v. City Metal Co.*, 87 F.3d 26, 33 (1st Cir. 1996) (alteration in original).

Ms. Dacier alleges that her "medical impairment(s), and the Employer's perception that she suffer(s) from a chronic impairment(s) were the motivational

4

factors in the Employer's decision to terminate." ECF No. 1-1 ¶ 29. The crux of Anchor's motion to dismiss is: Ms. Dacier was not disabled. Ms. Dacier was under medical care due to an assault. Anchor had actual and constructive knowledge that she was under medical care. ECF No. 1-1 ¶¶ 23, 24. The Court realizes that Ms. Dacier was fired before being able to acutely identify a disability and/or request any reasonable accommodations. However, the Court is reminded of the blue-collar folktale where a construction site foreman yells, "you're fired," to a worker falling from a scaffold in an effort escape liability. The Court can infer that until released from medical care, the type and level of actual disability and/or accommodations required, if any, cannot be determined with a quantum of clarity. The Court finds it plausible that while under medical care, as a direct result of a workplace injury, Anchor could have perceived Ms. Dacier as disabled—at least until able to attempt a return to work.

*Count IV*

Ms. Dacier alleges she was fired for reporting a workplace injury and availing herself to Workers' Compensation rights. ECF No. 1-1 ¶ 51. At this stage of litigation, the Court finds her claim plausible. The First Circuit has stated that the public policy behind the Rhode Island Whistleblowers Protection Act is "to encourage the prompt reporting and early, amicable resolution of potentially dangerous workplace situations, and to protect those employees who do report such violations from retaliatory action by employers." *Malone v. Lockheed Martin Corp.*, No. C.A. 07-065ML, 2009 WL 2151706, at *12 (D.R.I. July 16, 2009), *aff'd*, 610 F.3d 16 (1st

5

Cir. 2010). "Generally, 'where the terms of a statute are clear, a court must give the words their plain and obvious meaning.'" *Marques v. Fitzgerald*, 99 F.3d 1, 4 (1st Cir. 1996). Under the Rhode Island Whistleblowers Protection Act, "[a]n employer shall not discharge . . . an employee:

> (1) Because the employee . . . reports . . . to a public body . . . a violation . . . of a law . . . of this state . . . or the United States . . . , or
>
> (2) Because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action."

R.I. Gen. Laws § 28-50-3 (alterations in original). "'Public body' means any department, agency, commission, committee, board, council, bureau, or authority or any subdivision thereof of state or municipal government." R.I. Gen. Laws § 42-46-2.

Ms. Dacier alleges that she was fired because she reported a workplace injury–an injury that included police involvement–and for availing herself of rights under Rhode Island Workers' Compensation laws. ECF No. 1-1. Anchor construes Ms. Dacier's Workers' Compensation claim as the sole source of cooperating with a public body, while ignoring the actual assault and subsequent police involvement. The Warwick Police Department would qualify as a "public body" under the statutory definition. The very reporting of an assault would constitute "protected conduct" under the statute. Therefore, the Court finds Ms. Dacier's retaliation allegation plausible at this stage.

*Count V*

6

Dismissed by mutual agreement of both parties.[1]

*Conclusion*

For the foregoing reasons, the Court DENIES the motion to dismiss for failure to state a claim.

IT IS SO ORDERED.

/s/ John J. McConnell, Jr.

John J. McConnell, Jr.
United States District Judge

August 8, 2018

---

[1] The Plaintiff's initial complaint skipped V and stated this cause of action as VI. ECF No. 1-1. The Plaintiff corrected to Count V in ECF No. 10-1. However, the corrected Count V is moot due to dismissal by agreement of both parties. ECF Nos. 10-1 &13.